UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  06-20200-CIV-MARTINEZ-BANDSTRA**

NORTH ATLANTIC MARINE, LTD. and
ROBERT HERSHEY,

      Plaintiffs,

vs.

SEALINE INTERNATIONAL, LTD. et al.,

      Defendants.

_____/

## <u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>

THIS CAUSE came before the Court upon Defendants Sealine International, Ltd. and

Brunswick Corporation's Motion to Dismiss **(D.E. No. 41)** and Memorandum of Law in Support

**(D.E. No. 42)**, Defendant Gerald Berton's Motion to Dismiss **(D.E. No. 43)**, and Defendant

Global Yacht International, Ltd.'s Motion to Dismiss **(D.E. No. 44)**. The Court has carefully

considered the motions, which are fully briefed, and is otherwise duly advised.  For the reasons

discussed in this Order, this Court finds that the instant motions should be granted in part and

denied in part.

### I. Background

The instant motions relate to a seven-count Amended Complaint filed by Plaintiffs North

Atlantic Marine, Ltd. doing business as Freedom Marine ("Freedom Marine"), a New Jersey

corporation that is in the business of "selling high-end motor yachts," and Robert Hershey

("Hershey") (collectively "Plaintiffs"), one of North Atlantic's shareholders who is also "a

guarantor of its financial obligations." (Amended Complaint, D.E. No. 33 at ¶¶ 3-4). Plaintiffs

are suing Global Yachts International, Inc. ("Global") a Florida corporation that was the

"exclusive distributor of Sealine Yachts in the United States," and Gerald Berton ("Berton"), who

is the President of Global. *Id*. at ¶¶ 5, 8. Plaintiffs are also suing Sealine International, Ltd.

("Sealine"), a United Kingdom based company that is a "manufacturer of luxury yachts," and

Brunswick Corporation ("Brunswick"), which is a Delaware corporation that "owns 100% of

Sealine's stock."[1] *Id*. at ¶¶ 6,7. The parties do not dispute that this Court has diversity

jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiffs' Amended Complaint emphasizes that at all relevant times Global was the

exclusive distributor of Sealine yachts in North America pursuant to a 1995 agreement. *Id*. at ¶

10. Furthermore, Plaintiffs allege that in 2001 "Brunswick assumed some of the responsibility for

Sealine's obligations under the [d]istribution [a]greement," and Brunswick "agreed to extend

and/or honor the 1995 agreement, thereby maintaining [Global's] status as the exclusive North

American distributor of Sealine Yachts (the 'Distribution Agreement')." *Id*. at ¶ 12. Plaintiffs

allege that Brunswick modified the Distribution Agreement and required Global to set up

dealerships to sell Sealine yachts. *Id*. at 12.

In February of 2001, Freedom Marine and Global entered into a Dealer Sales and Service

Agreement ("Dealer Agreement"), a copy of which is attached to the Amended Complaint as

Exhibit A. (Amended Complaint at ¶ 13). Pursuant to the Dealer Agreement, Freedom Marine

became the exclusive dealer for the retail sale, display, and servicing of Sealine Yachts and parts

---

[1] Plaintiffs allege that Sealine is a wholly owned subsidiary of Performance Motor Yachts, Ltd., which in turn is a wholly owned subsidiary of Brunswick Corporation. (Amended Complaint at ¶¶ 6-7).

in the state of New Jersey. *Id* at ¶ 14. In addition, Freedom Marine was authorized to sell boats in New Jersey for delivery to customers in Florida. *Id*. Plaintiffs allege that Global Yachts and Freedom Marine "modified the Dealer Agreement by and through their course of dealing and conduct with one another." *Id*. at ¶ 15. This Court notes that the Dealer Agreement plainly states, and no party disputes, that the Dealer Agreement is governed by Florida law. *See* (Amended Complaint, Exh. A. at § 8).

Plaintiffs essentially allege that the Defendants "engaged in a pattern of activities which undermined the successful performance" of the Distribution Agreement between Global and Brunswick and the Dealer Agreement between Freedom Marine and Global. *Id*. at ¶ 16. More specifically, Plaintiffs allege that "Brunswick and/or Sealine:" a) interfered with the Dealer Agreement by making false statements and engaging in bad faith business practices; b) damaged the reputation of both Freedom Marine and Global Yachts in the boating industry by providing defective and unmarketable products for distribution in North America; c) refused to authorize Global Yachts to perform warranty repairs on defective Sealine Yachts; and d) failed to provide warranty repairs in a timely manner." *Id*. at ¶ 16. Furthermore, Plaintiffs' Amended Complaint alleges that a Brunswick representative announced that Brunswick, as opposed to Global, would be responsible for North American dealers of Sealine yachts and relevant advertising campaigns. *Id*. at ¶¶ 19-20. Plaintiffs allege that as a result of the Brunswick representative's statements, Berton and Global terminated all advertising in support of Freedom Marine and other dealers. *Id*. This allegedly caused damages to Freedom Marine, including a loss of potential sales.

Plaintiffs' Amended Complaint also contains allegations related to "defective boats" and "floor-plan financing." Freedom Marine was required to purchase Sealine yachts for its dealer

inventory, and it obtained floor-plan financing by issuing two $300,000 irrevocable letters of credit that were secured by the personal assets of Hershey. *Id*. at ¶¶ 21-23. Plaintiffs purchased three Sealine yachts, which it alleges "were defective and unmarketable." *Id*. at ¶ 24. However, Sealine, Brunswick, and Global allegedly refused to allow the return and replacement of the boats and they insisted that Freedom Marine keep the boats and allow repairs to be made by "authorized personnel." *Id*. at ¶ 25. Plaintiffs allege that "repairs were not done or even attempted in a timely manner," and "most, if not all, repairs that were performed were insufficient and the boats remained defective and unfit for the purpose for which they were intended." *Id*. at ¶ 26. As a result, Freedom Marine was allegedly unable to meet its obligations under its "floor-plan financing" and its creditor cashed in the irrevocable letters of credit, which resulted in a personal loss to Hershey. *Id.* at 27.

Plaintiffs' Amended Complaint also contains allegations that "Defendants essentially destroyed the retail market of Freedom Marine." *Id*. at ¶ 28. Plaintiffs allege that Global and Berton "unjustifiably and maliciously competed directly with Freedom Marine by overtly and implicitly underselling Freedom Marine." *Id*. at ¶ 29. Plaintiffs allege that "[r]egardless of whether Berton was acting on behalf of Global, he is individually liable for his tortious actions." *Id*. Plaintiffs provide two examples of the alleged conduct on the part of Global and Berton. First, Global and Berton sold a yacht directly to a New Jersey retail customer named George Engel, which "involved the overvaluation of Mr. Engel's trade-in vessel" in order to give him a "financial incentive" to purchase from Global and Berton instead of Freedom Marine. *Id*. at ¶ 31. Second, Global and Berton sold a yacht to a potential Freedom Marine customer during the "Newport Boat Show," and allegedly the sale price was "at or near the same price that Freedom

Marine paid for the . . . same boat." *Id*. at ¶ 32.  Plaintiffs allege that "Sealine and Brunswick knew or should have known of the direct competitive sales." *Id*. at ¶ 30.

Plaintiffs' Amended Complaint alleges the following counts: Count I, breach of the Dealer Agreement (against Global); Count II, "breach of duty of loyalty" (against Global and Berton); Count III, tortious interference with business opportunities (against Global and Berton); Count IV, tortious interference with the Dealer Agreement (against Sealine and Brunswick); Count V, "unfair competition" (against all Defendants); Count VI, breach of the implied warranty of merchantability; and Count VII, breach of the implied warranty of fitness for a particular purpose.

## II.  Standard of Analysis

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the allegations of the complaint as true.  *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999).  Moreover, the complaint must be viewed in the light most favorable to the plaintiff.  *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.,* 795 F.2d 948, 953 (11th Cir. 1986).  To warrant a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. State of Ala.,* 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

Nonetheless, to survive a motion to dismiss, a plaintiff must do more than merely label his or her claims.  *Blumel v. Mylander,* 919 F. Supp. 423, 425 (M.D. Fla. 1996).  Thus, dismissal of a complaint or a portion thereof is appropriate when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.  *Marshall County Bd. of*

*Educ.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. Discussion

The arguments advanced in Defendants' motions to dismiss, as well as Defendants' reply memorandums, contain much overlap. Furthermore, the filings of Global and Berton tend to rely heavily on the arguments advanced in Defendants Sealine and Brunswick's Memorandum in Support of Motion to Dismiss (D.E. No. 42) and their Reply Memorandum (D.E. No. 50). Defendants' arguments can be grouped into five major categories, and this Court considers the arguments categorically. First, Defendants recite a history of similar litigation between the instant parties and essentially argue that the instant lawsuit is duplicative of previous lawsuits and should be barred under principles of *res judicata*. Second, Defendants raise arguments that the economic loss doctrine bars the tort allegations in this suits and they challenge the legal sufficiency of the Plaintiffs' allegations related to tortious interference claims. Third, Defendants argue that Plaintiffs have failed to state a claim related to "breach of loyalty." Fourth, Defendants argue that there is no legal basis for what Plaintiffs have styled as a claim for "unfair competition." Finally, Defendants attack Plaintiff Hershey's individual standing to sue the Defendants for harm suffered by Freedom Marine. This Court considers each of these categories of arguments in turn, and provides further discussion of the arguments raised by each specific Defendant as appropriate.

### A.       Arguments Relating to Dismissal of the Amended Complaint with Prejudice on the Basis of *Res Judicata*

This Court first considers a number of arguments, none of which it finds persuasive, as to why Plaintiffs' Amended Complaint should be summarily dismissed with prejudice. First,

Defendants Sealine and Brunswick submitted a number of materials as an attachment to their motion to dismiss in an effort to demonstrate that the "latest battle between a boat dealer (Freedom Marine) and its former boat supplier (Global)" should be dismissed with prejudice because the operative complaint fails to state a claim" and "this is Freedom Marine's fifth complaint" in a number of federal and state courts. (D.E. No. 42 at 1-2). This Court addresses Defendants' arguments that the Amended Complaint fails to state a claim *infra*, but it finds that they have failed to demonstrate that the Amended Complaint should be dismissed with prejudice by virtue of the fact that it is the "fifth complaint" filed before a variety of federal and state courts.

Second, in a similar vein of argument, Defendant Global argues that Plaintiffs' claims against Global "are barred, and have been waived by way of a compulsory counterclaim in the previous state court action brought by Global against Plaintiff." (D.E. No. 44 at 3). Global relies on the Florida state court complaint attached as an exhibit to Defendants Sealine and Brunswick's motion to dismiss. *See id*; (D.E. No. 41, Exh. 2). They further argue that the doctrine of *res judicata* bars Plaintiffs' Amended Complaint. In response, Plaintiffs argue that these materials are beyond the four corners of the Amended Complaint. However, "[t]he Eleventh Circuit has held that, when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Davis v. Williams Communications., Inc.*, 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003) (citing *Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1279-80 (11th Cir. 1999); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)).

However, under Eleventh Circuit precedent, a claim under Florida law will be barred by

*res judicata* only if all four of the following elements are present: 1) there is a final judgment on the merits; 2) the decision was rendered by a court of competent jurisdiction; 3) the parties, or those in privity with them, are identical in both suits; and 4) the same cause of action is involved in both cases. *Cascella v. Canaveral Port Dist.*, 197 Fed. Appx. 839, 843 (11th Cir. 2006) (citing *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir.1999)).  In the instant case, Defendants explain, and the materials attached to Defendants Sealine and Brunswick's motion indicate, that the state court action resulted in a default judgment against North Atlantic Marine, Ltd.  This Court finds that this default judgment does not constitute a final judgment on the merits sufficient to demonstrate that *res judicata* bars the instant action.  Accordingly, Defendants' arguments that the instant action is barred by *res judicata* are denied without prejudice at this juncture of the litigation.

Third, Defendant Global argues that the Dealer Agreement attached to the Amended Complaint is "incomplete" because it does not include the "exhibits 'A' and 'B'" that are referenced in the agreement.  (D.E. No. 44 at 2).  In response, Plaintiffs argue that the Amended Complaint contains allegations that the parties "modified the agreement."  (D.E. No. 3) (citing Amended Complaint at ¶¶ 15, 35)).  Furthermore, this Court notes that the Amended Complaint alleges that the parties entered into the Dealer Agreement.  Accordingly, this Court finds that the arguments that Global and Plaintiffs did not enter into a valid agreement, and disputes as to what the terms of any agreement were, should not be addressed at this juncture of litigation.

### B.    Arguments Relating to the Economic Loss Doctrine and Tortious Interference Claims

The Florida Supreme Court has recently reiterated that the economic loss rule[2] is a

---

[2]  The economic loss rule is also referred to as the "economic loss doctrine."  *See Indemnity Ins. Co. of N. America v. American Aviation, Inc.*, 891 So. 2d 532, 534 (Fla. 2004).  This order uses the two terms interchangeably.

judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses, which are essentially disappointed economic expectations. *Indemnity Ins. Co. of N. America v. American Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). In Florida, the economic loss rule has been applied in two different circumstances: 1) "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract," and 2) "when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property." *Id.*

In terms of the first set of circumstances, the contractual privity economic loss rule, the Florida Supreme Court explained that "the prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.* (citing *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994)). In other words, the rule serves to prevent a party from "seeking to obtain a better bargain than originally made." *Id.* The Florida Supreme Court reiterated that "when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, *or could have*, addressed through their contractual agreement." *Id.* at 536-37 (emphasis added). Furthermore it noted that "courts have held that a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." *Id.* at 537 (citing *Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986)).

However, notwithstanding the general rule that the contractual privity economic loss rule bars parties in privity from recovering in tort for economic damages, Florida courts have permitted such actions "under certain limited circumstances." *Id.* The Florida Supreme Court

reiterated that "the economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action." *Id*. Rather, "where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract." *Id*.

The second set of circumstances in which the economic loss rule applies, which is referred to as the products liability economic loss rule, evolved to protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided for by warranty law. *See id*. at 538. In the specific context of products liability, "economic loss includes the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which is was manufactured or sold." *Id*. at 537 n.1 (internal quotes and citation omitted).

In *Indemnity Insurance Company of North America*, the Florida Supreme Court explained the evolution of products strict liability law in general and in Florida in particular. *See generally id*. The Florida Supreme Court reiterated that "[in *Florida Power & Light Co. v. Westinghouse Electric Corp.*, 510 So. 2d 899, 902 (Fla. 1987)] we expressly limited tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself." *Id*. at 541. It further emphasized that the products liability economic loss rule "applies even in the absence of privity of contract." *Id*. (citing *Airport Rent-A-Car, Inc. v. Prevost Car, Inc.*, 660 So. 2d 628, 631 (Fla. 1995) (holding that a cause of action for negligence against manufacturer of defective buses was barred by the economic loss rule notwithstanding absence of privity); *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1248 (Fla.1993) (holding that a cause of action against manufacturer of defective concrete was barred by the economic loss rule notwithstanding absence of privity)).

The Florida Supreme Court made it clear that "a manufacturer or distributor in a commercial relationship has no duty beyond that arising from its contract to prevent a product from malfunctioning or damaging itself." *Indemnity Ins. Co. of N. America*, 891 So. 2d at 542.

Notwithstanding these general principles of law, the Florida Supreme cautioned that "[i]ntentional tort claims such as fraud, conversion, intentional interference, civil theft, abuse of process, and other torts requiring proof of intent *generally* remain viable either in the products liability context or if the parties are in privity of contract," and that the economic loss doctrine "is not an escape hatch from intentional commercial torts." *Id*. at n.3. (emphasis added); *see also* Paul J. Schwiep, The Economic Loss Rule Outbreak: The Monster that Ate Commercial Torts, Fla. B. J., Nov. 1995, at 34, 42. As an Eleventh Circuit panel has suggested in a decision applying Florida law, "the economic loss rule provides that parties to a contract can only seek tort damages if conduct occurs that establishes a tort distinguishable from or independent of [the] breach of contract." *Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc.*, 184 Fed. Appx. 894, 902 (11th Cir. 2006) (citations omitted) (holding tort action for breach of fiduciary duty precluded by the economic loss rule).

Similarly, several federal district courts in the Eleventh Circuit have found that "[w]here the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that created by the breach of contract, a plaintiff is barred from bringing a separate tort action." *Behrman v. Allstate, Ins. Co.*, 388 F. Supp. 2d 1346, 1349 n.4 (S.D. Fla.2005) (citations omitted); *see also GEICO Cas. Co. v. Beauford*, Case No. 8:05-cv-697-T-24EAJ, 2007 WL 521928 (M.D. Fla. Feb. 15, 2007); *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1320 (S.D. Fla. 2002) (finding claims for tortious interferences with a contractual and prospective business relationship

should be dismissed as barred by the economic loss rule because of the similarity of the factual allegations and damages between contract and tort-based causes of action).

Thus, the elements necessary to state a claim for tortious interference with a business relationship factor into the analysis of whether the economic loss rules bar the claims. The Florida Supreme Court has clearly articulated the elements to prove a cause of action for tortious interference with a business relationship under Florida law: 1) the existence of a business relationship, 2) knowledge of the relationship on the part of the defendant, 3) an intentional and unjustified interference with the relationship by the defendant, and 4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)).

With these general principles of Florida's economic loss rule and the law relating to tortious interference with business relationships in mind, this Court now considers the Defendants' arguments in support of dismissal.

### 1.    Plaintiffs' Tortious Interference Claim Against Global is Barred by the Contractual Privity Economic Loss Doctrine

Defendant Global, through its adoption of Defendants Sealine and Brunswick's arguments, argues that Plaintiffs' Tortious interference with a business opportunity claim pursuant to Count III is barred because the parties were in contractual privity and the tort claims against Global are based on the same allegations that constitute its contract and warranty claims against Global and the same damages. *See* (D.E. No. 44 at 1; D.E. No. 42 at 11).   In a conclusory fashion, and again merely by adopting its response to Sealine and Brunswick's Motion to dismiss, Plaintiffs respond that the Amended Complaint's allegations of tortious conduct "is independent of any

breach of contract."[3]  *See* (D.E. No. 49 at 2; D.E. No. 48 at 2).  This Court agrees with

Defendant Global that, construing the alleged facts in a light most favorable to the Plaintiffs,

Global and Plaintiffs were in privity and that the contractual privity economic loss rule bars Count

III of Plaintiffs' Amended Complaint as to Defendant Global.

Plaintiffs' breach of contract claim related to the Dealer Agreement, Count I, alleges that

Global failed to refer all New Jersey customers to Freedom Marine, failed to provide marketable

products, failed to provide support, and "fail[ed] to perform its duties in good faith."  The essence

of the Dealer Agreement is that "distributor appoints dealer as an exclusive dealer for the . . .

State of New Jersey."  (Amended Complaint, Exh. A at pp. 1-2).  Count I realleges and adopts

the allegations in paragraphs 1 through 33.  *Id*. at ¶ 34.

Similarly, Plaintiffs' tortious interference with business opportunities claim pursuant to

Count III alleges that "Freedom Marine was the exclusive dealer for New Jersey and thus had a

reasonable expectation of selling Sealine Yachts to all New Jersey Sealine Yacht consumers," and

that "Global and Berton intentionally, unjustifiably and maliciously interfered with these potential

sales by making direct retail sales to New Jersey Sealine Yacht consumers using unfair methods."

(Amended Complaint at ¶¶ 42-44).  Again, Count III realleges and adopts the allegations in

paragraphs 1 through 33.  *Id*. at ¶ 41.  The prayer for damages is identical in both Counts I and

III.

In response, Plaintiffs rely solely on *Florida Specialty, Inc. v. H2ology, Inc.*, 742 So. 2d

523, 527 (Fla. 1st DCA 1999) for the proposition that "the economic loss rule does not apply

---

[3]  This Court notes that the practice of Plaintiffs and Defendants Berton and Global of
merely adopting arguments raised in other filings, often without any explanation of how the
concepts discussed in those other filings apply to the party that they are discussing, has further
complicated this Court's task.  In future filings, the parties shall minimize this practice or else their
filings may be stricken.

where the tort complained of is completely independent of the contract." *See* (D.E. No. 47 at 4;

D.E. No. 49 at 1). However, that case is completely inapposite to the facts of the instant case.

*Florida Specialty, Inc.* involved a negligence claim related to the discharge of a corrosive

substance, which the court found to be completely independent of the lease for three motor

vehicles that was executed between the parties in that case. 742 So. 2d at 527.

Taking the allegations in the Amended Complaint in a light most favorable to the

Plaintiffs, as this Court must, it finds that Plaintiffs and Global were in a contractual relationship.

Accordingly, their obligations to each other arose from the Dealer Agreement. Plaintiffs have not

alleged facts independent from those of the breach of contract claim. As the Florida Supreme

Court has emphasized, "when the parties are in privity, contract principles are generally more

appropriate for determining remedies for consequential damages that the parties have, or *could*

*have*, addressed through their contractual agreement." *Indemnity Ins. Co. of N. America v.*

*American Aviation, Inc.*, 891 So. at 536-37 (emphasis added). Furthermore it noted that "courts

have held that a tort action is barred where a defendant has not committed a breach of duty apart

from a breach of contract." *Id*. at 537 (citing *Electronic Sec. Sys. Corp. v. Southern Bell Tel. &*

*Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986)). This Court finds that because Plaintiffs

breach of contract claim and intentional interference claims are virtually identical, and they arise

from the same alleged conduct, Count III of Plaintiffs' Amended Complaint is barred under the

contractual privity economic loss rule as to Defendant Global.

> **2.      Plaintiffs Successfully State a Claim for Intentional Interference**
> **against Defendant Berton that is not Barred by the Economic Loss**
> **Doctrine**

Defendant Berton argues that Plaintiffs' intentional interference claim in Count III should

be dismissed as to him because the "Amended Complaint fails to allege a basis to hold Berton

individually liable" and because the economic loss doctrine bars the claim against him.  However, this Court agrees with the Plaintiffs, that construing the Amended Complaint in the light most favorable to the Plaintiffs, Plaintiffs sufficiently allege that Berton personally took actions that resulted in damages to Freedom Marine.  *See* (D.E. No. 47 at 2; Amended Complaint at ¶¶ 16, 18, 19, 29, 31, and 39).  *See also E & A Produce Corp. v. Olmo*, 864 So. 2d 447, 448 (Fla. 3d DCA 2003) (explaining that individual officers and agents of a corporation may be held personally liable for their tortious acts, even if such acts were committed within the scope of their employment or as corporate officers).

Furthermore, this Court finds that the tortious interference claim against Berton should not be barred by the economic loss doctrine because this claim arises from allegations that Berton's actions were committed independently of Freedom Marine, and his individual conduct is not governed by the terms of the Dealer Agreement.  *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996); Amended Complaint at ¶¶ 16, 18, 19, 29, 31, and 39). Thus, Berton's Motion to Dismiss is denied as to Count III as to Defendant Berton.

　　　　　　**3.    Plaintiffs' Tortious Interference Claim Against Sealine and Brunswick is Barred in part by the Products Liability Economic Loss Doctrine**

This Court now considers Plaintiffs tortious interference "with [the] Dealer Agreement" claim against Sealine and Brunswick in Count IV of the Amended Complaint.  Plaintiffs allege that Sealine and Brunswick "knew or should have known of the Dealer Agreement" between Global and Freedom Marine.  (Amended Complaint at ¶ 46).  Furthermore, Plaintiffs allege that "Sealine and Brunswick intentionally, unjustifiably and maliciously interfered with the Dealer Agreement by, among other things, failing to provide merchantable products or appropriate

-15-

warranty and repair service, and refusing to exchange or otherwise accept returns of defective products for merchantable products." *Id*. at 47.  Again, Count IV realleges and adopts the allegations in paragraphs 1 through 33.  *Id*. at ¶ 41.  The prayer for damages in Count IV is identical to that in all other counts of the Amended Complaint

Defendants Global and Brunswick urge dismissal on the basis of the economic loss rule, and they also argue that the Amended Complaint fails to allege any facts showing that there was "both a malicious intent and direct interference."  (D.E. No. 42 at 12).  In their cursory Response Memorandum, Plaintiffs explain that "[t]he Amended Complaint alleges that Sealine and Brunswick failed to provide merchantable products or appropriate warranty and repair service, and refused to exchange or otherwise accept returns of defective products for merchantable products," and they rely on paragraph 47 of the Amended Complaint (D.E. No. 48 at 2).

This Court agrees with Defendants that the product liability economic loss rule bars Plaintiffs' claims related to the quality of the boats.  As was discussed *supra*, the Florida Supreme Court has "expressly limited tort liability with respect to defective products to injury caused to persons or damage caused to property other than the defective product itself," and it has held that the products liability economic loss rule "applies even in the absence of privity of contract." *Indemnity Ins. Co. of N. America*, 891 So. 2d at 541.  The Florida Supreme Court has explained that "a manufacturer or distributor in a commercial relationship has no duty beyond that arising from its contract to prevent a product from malfunctioning or damaging itself." *Id*.  In explaining the rationale underlying Florida's strict liability law, the Florida Supreme Court relied heavily on the rationale of one of the California Supreme Court's seminal decisions on strict liability: "A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. *He can, however, be fairly charged with the risk*

-16-

*that the product will not match his economic expectations unless the manufacturer agrees that it will.*" *Id*. (quoting *Seely v. White Motor Co.*, 45 Cal. Rptr. 17, 403 P.2d at 151 (1965) (emphasis added by Florida Supreme Court). Accordingly, Count IV is barred by the products liability economic loss rule to the extent that the allegations relate to the quality of the boats and parts that Sealine and Brunswick manufactured.

However, notwithstanding the relatively vague allegations contained in paragraph 47 of the Amended Complaint, under the liberal pleading standard in Federal Rule of Civil Procedure 8(a), a complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *See Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). The gravamen of Plaintiffs' allegations, construing them in the light most favorable to Plaintiffs, is that Sealine and Brunswick intentionally "engaged in a pattern of activities" to undermine the Dealer Agreement, including actions such as refusing to provide service to Freedom Marine and making statements about Sealine yacht dealers. *See* (Amended Complaint at ¶¶ 16, 17, 47). This Court finds that Plaintiffs have stated a claim against Sealine and Brunswick with regard to the refusal of service and statements related to dealers.

### C.    Count II's Allegations of the "Breach of Duty of Loyalty" Fail to State a Claim

Count II of the Amended Complaint alleges that Global and Berton "each owed a duty of loyalty to Freedom Marine, including a duty to refrain from engaging in disloyal acts." (Amended Complaint at ¶ 38). Plaintiffs allege that Global and Berton breached their duty of loyalty "by, among other things, directly competing with Freedom Marine," which caused damages. Defendants' motions to dismiss focus on demonstrating that as a matter of law Defendants owed

no fiduciary duty to Plaintiffs. In response, Plaintiffs emphasize that they are not alleging a breach of fiduciary duty, but rather "a duty of loyalty." In support of this argument, Plaintiffs rely solely on *Insurance Field Services, Inc. v. White & White Inspection and Audit Service, Inc.* for the proposition that "[u]nder Florida law, there is a common law duty not to engage in disloyal acts." (D.E. No. 47 at 3; D.E. No. 49 at 2 (citing *Insurance Field Services, Inc. v. White & White Inspection and Audit Service, Inc.*, 384 So. 2d 303, 307-08 (Fla. 5th DCA 1980)).

This Court finds that *Insurance Field Services, Inc.* is completely inapplicable to the instant case. That case held that an employee who was in an employer/employee relationship owed a duty of loyalty to the employer not to compete with that employer while still employed. *Insurance Field Services, Inc.*, 384 So. 2d at 307-08. The court in that case explained: "While in the absence of an agreement, there is normally nothing improper with an agent or employee terminating the employment relationship and proceeding to compete with his former principal or employer, there nevertheless exists during the ongoing relationship a common law duty not to engage in disloyal acts in anticipation of future competition." *Id.* The instant case does not involve an employer/employee relationship, and this Court declines Plaintiffs' invitation to expand principles of Florida state law. Thus, this Court finds that on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, and dismissal of Count V of the Amended Complaint with prejudice is appropriate. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Furthermore, this Court notes that the relationship between Global and Freedom Marine was governed by the Dealer Agreement. *See generally* (Amended Complaint, Exh. A). This Court finds, in the alternative, that if Plaintiffs had stated a claim for a breach of duty of loyalty, that claim as to Global and Berton would be barred by the economic loss doctrine because

-18-

"contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, *or could have*, addressed through their contractual agreement." *Indemnity Ins. Co. of N. America*, 891 So. 2d at 536-37 (emphasis added); *see also Tai-Pan, Inc. v. Keith Marine, Inc.*, Case No. 95-338-Civ, 1997 WL 714898, * 7 n.12 (M.D. Fla. May 13, 1997) (noting that "a defendant need not be in privity of contract with a plaintiff in order for the tort claims against that defendant to be dismissed under the economic loss rule, assuming the plaintiff has a contractual or statutory remedy against another party.").[4]

### D. Count V's Allegations of "Unfair Competition" Fail to State a Claim

Count V of Plaintiffs' Complaint, which applies to all Defendants, alleges that "Defendants utilized improper competitive tactics against Freedom Marine such as underselling and failing to provide merchantable products." (Amended Complaint at ¶ 50). It also alleges that the Defendants "in bad faith, misappropriated the labors of and expenditures of Freedom Marine in developing the New Jersey market for Sealine Yachts for the Defendants['] own benefit." *Id.* at ¶ 51. These actions allegedly "created a likelihood of confusion in the marketplace which resulted in a decrease in sales by Freedom Marine, resulting in damages." *Id.* at ¶ 52.

Defendants' motions to dismiss argue that Plaintiffs' allegations fail to state a claim. As Defendants correctly observe, in order to prevail on an unfair competition claim under Florida common law, which is often referred to the tort of "passing off," a plaintiff must "establish deceptive or fraudulent conduct of a competitor and likelihood of consumer confusion." *See*

---

[4] This Court notes that the economic loss rule bars the breach of duty of loyalty claim against Berton, even if there is not privity between Berton and Plaintiffs. This Court notes that while it did not find that the economic loss rule barred Plaintiffs' tortious interference claim against Berton, the economic loss rule's rationale is more applicable to the breach of loyalty claim against Berton because his relationship with Freedom Marine was more directly governed by the terms of the Dealer Agreement than conduct that he is alleged to have taken independently of Freedom Marine.

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1493-94 (11th Cir. 1990) (citing

*Donald Frederick Evans and Assoc. v. Continental Homes, Inc.*, 785 F.2d 897, 914 (11th Cir.

1986)).  As the Florida Second District Court of Appeals explained:

> Under Florida law, as under the common law of most states, customer confusion is the gist of the actionable wrong. The rule of the early common law was to the effect that there must be shown actual or direct competition between the litigants as an essential prerequisite to relief in an action for infringement of a trade-mark or trade name. It has been held in several cases that there cannot be unfair competition unless there be, in fact, competition; that generically the term 'unfair competition' presupposes a real competition, present or prospective, of some kind; and that to invoke equitable relief the plaintiff must show that there is a competition.  The Florida Supreme Court, in *Sun Coast, Inc. v. Shupe*, [52 So. 2d 805 (Fla. 1951)], held that to justify enjoining the use of a trade name, circumstances must be such that it appears that the business of the first user will suffer from deceptive use, or that by reason of unfair competition there will be an imposition on the public.

*Stagg Shop of Miami, Inc. v. Moss*, 120 So. 2d 39, 40 (Fla. 2d DCA 1960).  Defendants argue

that the Amended Complaint is devoid of any allegation that Defendants tried to "pass off"

someone else's products as their own or that there was public confusion about the source of their

products.  *See* (D.E. No 42 at 14).

In response, Plaintiffs argue that Defendants "are mistaken in their narrow analysis of what

constitutes unfair competition," and that "[i]n essence, unfair competition is the bad faith

misappropriation of the labors and expenditures of another for one's own benefit in a commercial

context." (D.E. No. 48 at 3) (citing *Wilson v. Electro Marine Sys., Inc.,* 915 F.2d 1110 (7th Cir.

1990)).  In addition to relying on a non-binding Seventh Circuit opinion, which applies New York

state law, Plaintiffs misread the *Wilson v. Electro Marine Systems, Inc.* decision.  The Seventh

Circuit panel in that case explained:

> Unfair competition originally was an extension of trademark law, and was limited to circumstances in which a competitor was "passing off" or "palming off" the product of another as his own. The landmark Supreme Court case of *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918),

expanded the parameters of unfair competition beyond "palming off" by refusing to "concede that the right of equitable relief is confined to that class of cases," although those cases were still the most common.  Some courts, including those in New York, took the lead and rejected similar attempts to dismiss unfair competition claims that did not allege any "palming off."  Although not limited in that respect, New York courts have applied some concrete limiting standards to unfair competition cases since International News Service. As the Second Circuit explained in 1980, "The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another . . . . Central to this notion is some element of bad faith."  It is not sufficient for plaintiffs to show that a defendant's action is "unfair"-"New York law in this area is indeed flexible, but it is not that flexible." *Id*.  Thus New York courts have required a showing that the defendant obtained access to the idea through an abuse of a fiduciary or confidential relationship with the plaintiff or via some sort of fraud or deception . . . and (2) that the defendant's use of the idea deprived the plaintiff of the opportunity to reap its due profits on the idea . . . .

*Wilson*, 915 F.2d at 1118-19.

Plaintiffs' Amended Complaint contains no allegations that Defendants had a confidential or fiduciary relationship with Freedom Marine, or that the Defendants misappropriated any idea from Freedom Marine that they themselves used.  The general gravamen of Plaintiffs' Amended Complaint is at odds with the notion that Plaintiffs can establish deceptive or fraudulent conduct of a competitor and likelihood of consumer confusion.  There are no allegations in the Amended Complaint, nor can any construction of the factual allegations support the notion, that Defendants tried to "pass off" Freedom Marine's products as its own.  *See M.G.B. Homes, Inc.*, 903 F.2d at 1494.  Since on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, this Court finds that dismissal of Count V of the Amended Complaint with prejudice is appropriate.  *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

**E.    Plaintiff Hershey should be Dismissed without Prejudice for Lack of Standing to Assert a Direct Claim for Damages Suffered by a Corporate Entity**

Defendants argue that Plaintiff Hershey lacks standing to sue them in his individual

capacity. Defendants emphasize that Hershey's claims against Defendants are the same as those alleged by Freedom Marine, and that Hershey "does not have (or allege) any direct relationship with Sealine or Brunswick (or any other defendant)." *See, e.g.,* (D.E. No. 52 at 15). As Defendants correctly observe, Hershey alleges that he can sue Defendants because he is a Freedom Marine shareholder and that he sustained injuries because he personally guaranteed Freedom Marine's loan to a third-party floor plan financier. *Id.* (citing Amended Complaint at ¶¶ 4, 22, 23, 27). Hershey's alleged damages stem from the allegations that Defendants' actions harmed Freedom Marine, which in turn was unable to pay its creditor, and thus harmed Hershey when the creditor drew funds from Freedom Marine's irrevocable letter of credit. *See* (Amended Complaint at ¶¶ 21-27). In response, Plaintiffs merely state that Hershey "suffered losses which were not direct losses of Freedom Marine and thus [he] is claiming something other than a simple investment in a company." (D.E. No. 48 at 4).

Under Florida law a shareholder cannot sue in the shareholder's name for injuries to a corporation unless there is a special duty between the wrongdoer and the shareholder, and the shareholder has suffered an injury separate and distinct from that suffered by other shareholders. *Braun v. Buyers Choice Mortg. Corp. ex rel. McAloon*, 851 So. 2d 199, 203 (Fla. 4th DCA 2003); *Alario v. Miller*, 354 So. 2d 925, 926 (Fla. 2d DCA 1978) (noting that "[i]f the damages are only indirectly sustained by the stockholder as a result of injury to the corporation, the stockholder does not have a cause of action as an individual.").

This Court finds that Hershey has failed to allege the existence of any special duty between him and the Defendants, nor has he pled an injury or wrong that has occurred *to him* as opposed to Freedom Marine. *See U.S. v. Palmer*, 578 F.2d 144, 145-46 (5th Cir. 1978) (explaining that the "law is clear that only a corporation and not its shareholders, not even a sole shareholder, can

complain of an injury sustained by, or a wrong done to, the corporation."); *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir. 1968) (explaining that only a corporation may sue for its own losses even "in cases where the individual is the sole stockholder"); *Lincoln Oldsmobile, Inc. v. Branch*, 574 So. 2d 1111, 1114 (Fla. 2d DCA 1990) (noting that the rule applies "even where the individual is the sole stockholder of the corporation") (citing *Schaffer and Gutierrez v. Shaffer*, 490 So. 2d 1299, 1299 (Fla. 3d DCA 1986)).  This Court finds that Plaintiff Hershey should be dismissed without prejudice.  Plaintiffs may have leave, as ordered *infra*, to file a second amended complaint that contains allegations related to any special duty owed to Hershey by the Defendants and of a harm that is independent of the harm suffered by the corporation. However, this Court finds it appropriate to remind Plaintiffs that "[w]hen the allegations contained in a complaint are wholly conclusory . . . and fail to set forth facts which, if proved, would warrant the relief sought, it is proper to dismiss for failure to state a claim." *Davidson v. Georgia*, 622 F.2d 895, 897 (5th Cir. 1980).[5]  Furthermore, the liberal pleading standard of the Federal Rules of Civil Procedure is conscripted by Rule 11(b).  Plaintiffs are cautioned that if this Court later determines that Federal Rule 11(b) has been violated, it will impose appropriate sanctions.  *See* Fed. R. Civ. P. 11(c).

In conclusion, the following counts remain pending in this suit: Count I, Count III as to Defendant Berton, Count IV in part as to Sealine and Berton, Count VI, and Count VII.

It is hereby:

**ORDERED and ADJUDGED** that

---

[5]  In *Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

1.  Defendants Sealine International, Ltd. and Brunswick Corporation's Motion to Dismiss **(D.E. No. 41) is GRANTED in part and DENIED in part**, consistent with the findings in this Order.

2. Defendant Gerald Berton's Motion to Dismiss **(D.E. No. 43) is GRANTED in part and DENIED in part**, consistent with the findings in this Order.

3.  Defendant Global Yacht International, Ltd.'s Motion to Dismiss **(D.E. No. 44)** is **GRANTED in part and DENIED in part**, consistent with the findings in this Order.

4.  Plaintiffs may file a second amended complaint on or before **Tuesday, April 7, 2007 at 4:30 p.m.** consistent with this Court's findings in part III(E) of this Order.  Pursuant to this Court's Trial Setting Order, Plaintiffs may not add any additional parties or additional claims.

DONE AND ORDERED in Chambers at Miami, Florida, March 29, 2007.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Bandstra
All Counsel of Record

-24-